**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

RONNIE JAMES CUNNINGHAM, JR.,

                 Plaintiff,

       v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,

                 Defendant.

CIVIL ACTION NO. 1:13-CV-01659

(MEHALCHICK, M.J.)

## MEMORANDUM OPINION

This is an action brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the Plaintiff's claim for disability insurance benefits under the Social Security Act. The matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 16; Doc. 17). For the reasons expressed herein, the Commissioner's decision shall be **REVERSED** and **REMANDED** for further proceedings.

## I.  PROCEDURAL HISTORY

On November 19, 2010, Plaintiff Ronnie James Cunningham, Jr., filed an application for disability insurance benefits alleging that he became disabled on October 23, 2010, due to lumbar degenerative disc disease. Mr. Cunningham's initial application was denied on January 19, 2011, and he timely requested a hearing before an administrative law judge ("ALJ"). On April 11, 2012, Mr. Cunningham appeared with his attorney for an

administrative hearing before ALJ Patrick S. Cutter. On May 23, 2012, the ALJ denied Mr.

Cunningham's application for disability insurance benefits, finding that he was capable of

performing a limited range of light work and making an adjustment to work that exists in

significant numbers in the national economy. Mr. Cunningham requested administrative

review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication

and Review, submitting an additional two-page medical opinion from Mr. Cunningham's

treating orthopedist to rebut certain of the ALJ's findings. The Appeals Council denied his

request for review on May 7, 2013. This makes the ALJ's May 23, 2012, decision the "final

decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g). 20

C.F.R. § 404.981.

Mr. Cunningham appealed the Commissioner's final decision by filing the complaint

in this action on June 19, 2013. (Doc. 1). The Commissioner filed her answer to the

complaint on September 5, 2013. (Doc. 7). Together with her answer, the Commissioner

filed a transcript of the administrative record in Mr. Cunningham's case. (Doc. 8). The

matter is now fully briefed by the parties and ripe for decision. (Doc. 9; Doc. 12; Doc. 13).

## II.  STANDARD OF REVIEW

When reviewing the denial of disability benefits, the Court's review is limited to

determining whether those findings are supported by substantial evidence in the

administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Johnson v. Comm'r of Soc. Sec.*,

529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather

such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks

omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Mr. Cunningham is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[1] that makes it impossible to do his or her previous work or any other substantial gainful activity[2] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[3] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[4] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520. The claimant bears the initial burden of demonstrating a medically determinable

---

[1] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[2] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

[3] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. 20 C.F.R. § 404.1545(a)(2).

impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); *Mason*, 994 F.2d at 1064.

## III. THE ALJ'S DECISION

In his May 23, 2012, decision, the ALJ determined that Mr. Cunningham met the insured status requirement[5] of the Social Security Act through December 31, 2015. (Admin. Tr. 16, Doc. 8-2, at 17). At step one of the five-step process, the ALJ determined that Mr. Cunningham did not engage in any substantial gainful activity between his alleged onset date of October 23, 2010, and the date of the ALJ's decision. (Admin. Tr. 16, Doc. 8-2, at 17). At step two, the ALJ determined that Mr. Cunningham had the following severe impairment: degenerative disc disease of the lumbar spine. (Admin. Tr. 16, Doc. 8-2, at 17). The ALJ also considered several other medically determinable health conditions found in the claimant's medical history, finding each to be non-severe. (Admin. Tr. 16–18, Doc. 8-2, at 17–19). At step three, the ALJ determined that Mr. Cunningham did not have an impairment, or combination of impairments, that met or medically equaled the severity of any one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 18, Doc. 8-2, at 19).

---

[5] "Under 20 C.F.R. § 404.131, [a claimant] is required to establish that he became disabled prior to the expiration of his insured status." *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990).

Prior to step four, the ALJ determined Mr. Cunningham's RFC based on the evidence of record, including the claimant's testimony, the findings and opinions of treating and examining medical sources, and the testimony of the claimant's girlfriend. The ALJ determined that Mr. Cunningham retained the RFC to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567, including certain non-exertional limitations. (Admin. Tr. 18–20, Doc. 8-2, at 19–21). Specifically, the ALJ found that:

> [T]he claimant had the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). The claimant is capable of occasional climbing, balancing, stooping, kneeling, crouching and crawling. The claimant's work must be able to be done while sitting or standing and must allow for access to a restroom. The claimant is limited to unskilled (defined as "work that requires little or no judgment to do simple duties that can be learned on the job in thirty days or less with little vocational preparation). The claimant has a moderate (defined as "more than a slight limitation but the function can still be performed on a consistent enough basis to be satisfactory to employers) limitation in the ability to maintain attention and concentration for extended periods.

(Admin. Tr. 18, Doc. 8-2, at 19).

Pursuant to 20 C.F.R. § 404.1529(c) and Social Security Ruling 96-7p, 1996 WL 374186, the ALJ considered Mr. Cunningham's testimony and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Admin. Tr. 19, Doc. 8-2, at 20; *see also* Admin. Tr. 30–47, Doc. 8-2, at 31–48).

Pursuant to 20 C.F.R. § 404.1527(c), the ALJ considered the medical opinion of Raymond E. Dahl, D.O., Mr. Cunningham's treating orthopedist. (Admin. Tr. 19, Doc. 8-2, at 20). Mr. Cunningham first presented to Dr. Dahl on November 11, 2010, after an October 29, 2010, MRI ordered by Cunningham's primary care physician revealed evidence

of lumbar spinal stenosis. (Admin. Tr. 232–33, Doc. 8-7, at 37–38; Admin. Tr. 276, Doc. 8-8, at 36). Dr. Dahl examined Mr. Cunningham, observing that he presented with "normal posture and gait," "[n]egative straight leg raise bilaterally," and "[g]ood motor function in both lower extremities." (Admin. Tr. 276, Doc. 8-8, at 36). Dr. Dahl noted "palpable tenderness across the base of the lumbosacral spine," and "pain with flexion, extension, side bending and rotation." (Admin. Tr. 276, Doc. 8-8, at 36). Dr. Dahl further noted that the recent "MRI of the lumbar spine demonstrates that he has multilevel degenerative disc disease with some lower lumbar focal areas of spinal stenosis." (Admin. Tr. 276, Doc. 8-8, at 36). Dr. Dahl diagnosed Mr. Cunningham with "[m]ultilevel degenerative disc disease," and recommended epidural steroid injections, which Mr. Cunningham opted to defer so he could think about it first. (Admin. Tr. 276, Doc. 8-8, at 36). Dr. Dahl provided Mr. Cunningham with a note excusing him from work due to his medical condition until his next appointment, scheduled for January 6, 2011. (Admin. Tr. 300, Doc. 8-8, at 60).

On November 24, 2010, Dr. Dahl completed forms for Mr. Cunningham's employer and for a domestic relations court verifying that Mr. Cunningham was unable to work due to multilevel degenerative disc disease and severe back pain. (Admin. Tr. 297–99, Doc. 8-8, at 57–59). On December 3, 2010, and December 13, 2010, Dr. Dahl completed forms for Mr. Cunningham's long term disability insurer verifying his inability to work due to multilevel degenerative disc disease with severe lower back pain. (Admin. Tr. 293, Doc. 8-8, at 53; Admin. Tr. 295, Doc. 8-8, at 55).

Mr. Cunningham presented for a second office visit with Dr. Dahl on January 6, 2011. (Admin. Tr. 275, Doc. 8-8, at 35). He reported "difficulty walking long distances because of pain" and "difficulty being on his feet." (Admin. Tr. 275, Doc. 8-8, at 35). After

examining Mr. Cunningham, Dr. Dahl observed that this patient presented with "normal posture and gait," but "tenderness across the base of lumbosacral spine. Pain with range of motion and testing of lumbar spine." (Admin. Tr. 275, Doc. 8-8, at 35). Dr. Dahl confirmed his diagnosis of multilevel degenerative disc disease of the lumbar spine." (Admin. Tr. 275, Doc. 8-8, at 35). Dr. Dahl noted that Mr. Cunningham's condition was "much more severe than one would expect for a gentleman his age," and he expressed his opinion that Cunningham "is going to be permanently disabled." (Admin. Tr. 275, Doc. 8-8, at 35).

On January 12, 2011, Dr. Dahl completed forms for Mr. Cunningham's employer and for his long term disability insurer verifying that Cunningham remained unable to work due to multilevel degenerative disc disease of the lumbar spine with severe pain, which limited his ability to walk and stand on the job. (Admin. Tr. 285, Doc. 8-8, at 45; Admin. Tr. 287–88, Doc. 8-8, at 47–48). Asked on one form to provide a probable duration for Mr. Cunningham's condition, Dr. Dahl responded: "lifetime." (Admin. Tr. 287, Doc. 8-8, at 47). On January 31, 2011, Dr. Dahl completed a similar form for the domestic relations court, again verifying that Mr. Cunningham was unable to work due to multilevel degenerative disc disease of the lumbar spine. (Admin. Tr. 291, Doc. 8-8, at 51).

Mr. Cunningham presented for a third office visit with Dr. Dahl on April 7, 2011. (Admin. Tr. 273–74, Doc. 8-8, at 33–34). Upon examination of Mr. Cunningham, Dr. Dahl observed "normal posture and gait," but "pain with flexion and extension of the lumbar spine," "palpable tenderness over the lumbosacral spine," and "evidence of spasm involving he paraspinal musculature of the lumbar spine." (Admin. Tr. 273, Doc. 8-8, at 33). Dr. Dahl noted that: "His MRI shows that he has bilateral facet arthropathy at L4-5 as well as disc bulging and degenerative disc disease at L5-S1. He has again facet arthropathy. He has disc

8

bulging as well as degenerative disc disease."[6] (Admin. Tr. 273, Doc. 8-8, at 33). Dr. Dahl reiterated his diagnosis of "[d]egenerative disc disease, facet arthropathy and stenosis L4-5 and L5-S1." (Admin. Tr. 273, Doc. 8-8, at 33). Dr. Dahl noted that he had encouraged Mr. Cunningham to "seek legal counsel in order to help him with disability," because Dr. Dahl "d[id] not feel that he is going to be able to return to a laboring-type job." (Admin. Tr. 274, Doc. 8-8, at 34).

On October 28, 2011, Dr. Dahl provided the claimant's counsel with a letter setting forth various medical opinions with respect to Mr. Cunningham's medical condition and resultant limitations, which claimant's counsel then submitted to the ALJ for consideration. (Admin. Tr. 303–04, Doc. 8-8, at 63–64). Dr. Dahl noted that Mr. Cunningham had initially presented with complaints of severe low back pain, that narcotic painkillers prescribed by his primary care physician were not helping to resolve the pain, and that he had "significant difficulty standing and being on his feet and was unable to walk much of a distance." (Admin. Tr. 303, Doc. 8-8, at 63). Based on his physical examination of the claimant, Dr. Dahl found that Mr. Cunningham had presented with "normal posture and *antalgic* gait," "significant tenderness across the base of the lumbosacral spine," and "[p]ain with flexion and extension of the lumbar spine." (Admin. Tr. 303, Doc. 8-8, at 63) (emphasis added). Dr. Dahl further observed that a recent "MRI demonstrated that he had severe degenerative disc disease at L4-5 and L5-S1 with evidence of nerve root impingement

---

[6] Dr. Dahl's treatment notes do not indicate whether this comment is based on a new MRI or the same October 29, 2010, MRI he had previously reviewed in connection with Mr. Cunningham's November 11, 2010, office visit. The findings summarized in his treatment notes, however, are consistent with the findings recorded by a radiologist in the October 29, 2010, MRI report.

at both of those levels." (Admin. Tr. 303, Doc. 8-8, at 63). Dr. Dahl noted that he had been seeing Mr. Cunningham "periodically," and that "multiple conservative therapies" had been attempted without success. (Admin. Tr. 303, Doc. 8-8, at 63). Based on these findings, Dr. Dahl concluded that:

> Mr. Cunningham has severe degenerative disc disease and bilateral facet arthropathy at L4-5 and L5-S1 causing lumbar spinal stenosis. He has constant pain involving his lower back. He has difficulty finding positions of comfort. He is unable to stand or sit for long periods of time. He has symptoms of neurogenic claudication where he cannot walk long distances because of the radicular symptoms that develop in both legs, which are weakness, burning, numbness and tingling. I feel that Mr. Cunningham's lumbar spinal stenosis and degenerative disc disease meets the listing of 1.04, disorders of the spine. Mr. Cunningham currently meets this listing and has met this listing continuously since the day I have met him . . . . I base my opinion on physical exam as well as MRI findings.
>
> All of my opinions have been offered with a reasonable degree of medical certainty. I feel that Mr. Cunningham's prognosis is very poor and that he should qualify for social security disability benefits.

(Admin. Tr. 303–04, Doc. 8-8, at 63–64).

On April 11, 2012, Dr. Dahl made himself available to testify at Mr. Cunningham's administrative hearing by telephone, but the ALJ chose instead to request that Dr. Dahl respond to written interrogatories after the hearing. (Admin. Tr. 26, Doc. 8-2, at 27). On April 12, 2012, the ALJ mailed a set of five written interrogatories to Dr. Dahl, and Dr. Dahl promptly returned his written responses by mail on April 20, 2012. (Admin. Tr. 309–11, Doc. 8-8, at 69–71). One of the interrogatories asked whether Mr. Cunningham's "impairments established by the medical evidence . . . exhibit[ed] the diagnostic criteria" of Listing 1.04(A),[7] followed by "yes" and "no" checkboxes, to which Dr. Dahl responded by

---

[7] Under the listings set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1, a claimant may be found disabled based on medical criteria alone, without consideration of
*(footnote continued on next page)*

marking the space labeled "yes." (Admin. Tr. 310, Doc. 8-8, at 70). A follow-up interrogatory requested "specific clinical signs or findings" that satisfy the 1.04(A) criteria and the earliest date when the listing was met. (Admin. Tr. 311, Doc. 8-8, at 71). Dr. Dahl responded:

> Severe low back pain with [bilateral] lower extremity pain. Develops neurogenic claudication[8] with walking and being on his feet. [Positive straight-leg raise, right leg], limited spinal [range of motion], lumbar para-spinal spasm. Met listing 11/11/2010.

> (Admin. Tr. 311, Doc. 8-8, at 71).

vocational criteria. Listing 1.04 addresses medical criteria for disorders of the spine that establish disability without consideration of vocational ability. Under 1.04(A), a claimant may be found disabled due to a spinal disorder "resulting in compromise of a nerve root" with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

> 20 C.F.R. pt. 404, subpt. P, app.1, § 1.04(A).

Although discussed at the administrative hearing and the ALJ's decision, and clearly at issue based on the medical evidence in the record, the ALJ did not ask about Listing 1.04(C), which similarly provides that a claimant may be found disabled due to a spinal disorder "resulting in compromise of a nerve root" with:

> Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging , manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined [elsewhere].

> 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(C).

Dr. Dahl's narrative response appears to attempt to address both listings.

[8] "Neurogenic claudication is synonymous with pseudoclaudication." *Holland v. Comm'r, Soc. Sec. Admin.*, No. SAG-13-2648, 2014 WL 2514802, at *2 n.2 (D. Md. June 3, 2014) (citing Thomas N. Byrne et al., *Diseases of the Spine and Spinal Cord* 148 (2000)); *see also Naegele v. Barnhart*, 433 F. Supp. 2d 319, 323 (W.D.N.Y. 2006) ("Pseudoclaudication, or neurogenic claudication, means intermittent limping caused by lumbar spinal stenosis.") (citing *Stedman's Medical Dictionary* 360 (27th ed. 2000)).

Ultimately, the ALJ afforded "little weight" to Dr. Dahl's opinions that Mr. Cunningham met the criteria of Listing 1.04 and that Mr. Cunningham was incapable of sustaining gainful work activity. (Admin. Tr. 19, Doc. 8-2, at 20). The ALJ noted that, pursuant to 20 C.F.R. § 404.1527(e)[9] and Social Security Ruling 96-5p, 1996 WL 374183, these are issues reserved for the Commissioner and therefore Dr. Dahl's opinions on these issues were not entitled to controlling weight or special significance. (Admin. Tr. 19, Doc. 8-2, at 20). The ALJ explained that:

> The opinions are inconsistent with Dr. Dahl's own objective clinical findings, which indicate some lumbar pain and tenderness but demonstrate negative straight-leg raise testing and good motor function in the lower extremities, with no aggressive treatment such as surgical intervention recommended for the claimant . . . . Further, Dr. Dahl noted no spinal arachnoiditis or pseudoclaudication evidence by medically acceptable imaging, as required by listing 1.04.

(Admin. Tr. 19, Doc. 8-2, at 20).

Pursuant to 20 C.F.R. § 404.1513(d) and Social Security Ruling 06-03p, 2006 WL 2329939, the ALJ considered the testimony of Mr. Cunningham's girlfriend, in which she described Mr. Cunningham's activities of daily living and the impact of his alleged impairments on his functional abilities. (Admin. Tr. 20, Doc. 8-2, at 21; *see also* Admin. Tr. 48–54, Doc. 8-2, at 49–55). The ALJ found the girlfriend's testimony to be partially credible, to the extent it supported but did not exceed the ALJ's RFC determination. (Admin. Tr. 20, Doc. 8-2, at 21).

At step four of the five-step process, the ALJ determined that Mr. Cunningham was

---

[9] The Court notes that 20 C.F.R. § 404.1527 was recently amended, with the subsection formerly labeled as § 404.1527(e) being renumbered as § 404.1527(d), without any substantive change. *See* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012) (codified at 20 C.F.R. pts. 404 and 416).

not capable of performing any past relevant work, as the exertional and non-exertional demands of his prior employment exceeded his RFC. (Admin. Tr. 21, Doc. 8-2, at 22). At step five, the ALJ determined that, based on the claimant's age, education, relevant work experience, and RFC, jobs existed in significant numbers in the national economy which Mr. Cunningham could perform. (Admin. Tr. 21–22, Doc. 8-2, at 22–23). The ALJ found that Mr. Cunningham was 42 years old on the alleged disability onset date, he had at least a high school education, and he was able to communicate in English. (Admin. Tr. 21, Doc. 8-2, at 22). Based on the testimony of a vocational expert, the ALJ found that a significant number of jobs exist in the local and national economies for an individual of Mr. Cunningham's age, education, work experience, and RFC, including occupations such as information clerk, cashier, or bakery worker. (Admin. Tr. 21–22, Doc. 8-2, at 22–23; *see also* Admin. Tr. 56–57, Doc. 8-2, at 57–58). As a consequence, the ALJ concluded that Mr. Cunningham was not disabled at any time between his alleged onset date of October 23, 2010, and the date of the ALJ's decision, May 23, 2012. (Admin. Tr. 22, Doc. 8-2, at 23).

## IV. ANALYSIS

Mr. Cunningham asserts that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to properly consider the medical opinion of Mr. Cunningham's treating physician, Dr. Dahl, who opined that Mr. Cunningham's condition met the criteria of Listing 1.04; and (2) the ALJ failed to consider certain non-exertional limitations — a need to use a cane for ambulation and balance and a need to elevate his legs 90 degrees periodically throughout the day — and to incorporate these limitations into the hypotheticals posed to the vocational expert at the administrative hearing. In the alternative, Mr. Cunningham contends that an August 16, 2012, medical opinion letter by Dr. Dahl

submitted to the Appeals Council constitutes new and material evidence justifying a sentence-six remand of this case for further proceedings.

## A. NEW EVIDENCE SUBMITTED TO THE APPEALS COUNCIL

To facilitate the "orderly and sympathetic administration" of the Social Security disability insurance benefits program, an "unusually protective four-step process for the review and adjudication of disputed claims" has been established by Congress and the Commissioner. *Heckler v. Day*, 467 U.S. 104, 106 (1984). "First, a state agency determines whether the claimant has a disability and the date the disability began or ceased." *Heckler*, 467 U.S. at 106 (citing 42 U.S.C. § 421(a), and 20 C.F.R. § 404.1503). "Second, if the claimant is dissatisfied with that determination, he may request reconsideration of the determination" by the state agency, which in some cases includes a full evidentiary hearing. *Heckler*, 467 U.S. at 106–07 (citing 20 C.F.R. §§ 404.907–404.921). "Third, if the claimant receives an adverse reconsideration determination, he is entitled by statute to an evidentiary hearing and to a de novo review by an Administrative Law Judge . . . ." *Heckler*, 467 U.S. at 107 (citing 42 U.S.C. § 405(b), and 20 C.F.R. §§ 404.929–404.961). "Finally, if the claimant is dissatisfied with the decision of the ALJ, he may take an appeal to the Appeals Council . . . ." *Heckler*, 467 U.S. at 107 (citing 20 C.F.R. §§ 404.967–404.983). "These four steps exhaust the claimant's administrative remedies. Thereafter, he may seek judicial review in federal district court." *Heckler*, 467 U.S. at 107 (citing 42 U.S.C. § 405(g)).

The Third Circuit has discussed the standard that governs the Appeals Council's review of purportedly new and material evidence that was not present in the record considered by the ALJ:

> The regulations permit the claimant to submit to the Appeals Council "new
> and material" evidence that relates to the period on or before the date of the

ALJ's hearing decision. The Appeals Council then must "evaluate the entire record including the new and material evidence submitted." However, the submission of the new and material evidence does not require the Appeals Council to grant review. On the contrary, the regulations provide that the Appeals Council will grant review only if it finds that the ALJ's decision "is contrary to the weight of the evidence currently of record."

*Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (quoting 20 C.F.R. § 404.970(b)) (citations omitted); *see also Heckler*, 467 U.S. at 107 n.5.

Following the ALJ's decision on May 23, 2012, Mr. Cunningham submitted a second opinion letter by Dr. Dahl in support of his benefits claim. In the letter, dated August 16, 2012, Dr. Dahl disputes several of the ALJ's findings. (Admin. Tr. 314–15, Doc. 8-8, at 74–75). In particular, Dr. Dahl stated:

> [Mr. Cunningham] recently was denied Social Security Disability benefits based on the fact that medically acceptable imaging showed no evidence of spinal arachnoiditis or pseudoclaudication. I feel that this is incorrect. I feel that his MRI does demonstrate evidence of pseudoclaudication which would be entrapment of nerve roots in the lumbar spine. His MRI shows that he has disc desiccation and moderate narrowing of the disc space at L4-5 and L5-S1. This causes encroachment of the L5-S1 nerve roots bilaterally leading to pseudoclaudication. Also when measuring claudication from a clinical standpoint this would be done with dynamic process rather than static process, meaning that we would have the patient walk on a treadmill until he felt that he could not walk any further and then a clinical exam is performed and the patient would have obvious radicular symptoms. . . . [T]hat would be when Mr. Cunningham would have positive straight leg raise. Also with motor testing after walking on the treadmill he would have noted weakness. Patients with severe spinal stenosis often will have a normal clinical exam sitting in the office but then when placed on a treadmill would develop symptoms of neurogenic claudication and will have a much different clinical exam that is in no way normal compared to their prior clinical exam. This is one of the reasons that Mr. Cunningham consistently reported nonradicular type pain and weakness when interviewed.

(Admin. Tr. 314, Doc. 8-8, at 74).

Dr. Dahl addressed Mr. Cunningham's claim that he needed to use of a cane to ambulate effectively, noting that it was "consistent with Mr. Cunningham's condition that he would need to use a cane in the left hand for ambulation and balance. I recommend the

use of a cane for these purposes." (Admin. Tr. 315, Doc. 8-8, at 75). Dr. Dahl further noted that "[i]t is consistent with Mr. Cunningham's condition that he would need to elevate both legs to a 90 degree angle on a frequent basis when sitting." (Admin. Tr. 315, Doc. 8-8, at 75). Dr. Dahl reiterated his opinion that Mr. Cunningham met the criteria of Listing 1.04, and that he was "deserving of Social Security Disability benefits." (Admin. Tr. 314–15, Doc. 8-8, at 74–75).

On May 7, 2013, the Appeals Council denied Mr. Cunningham's request for review of the ALJ's decision. (Admin. Tr. 1–3, Doc. 8-2, at 2–4). In denying review, the Appeals Council found that these additional medical records did not "provide a basis for changing the [ALJ]'s decision" because they were not "contrary to the weight of evidence of record." (Admin. Tr. 2, Doc. 8-2, at 3).

Unlike the administrative appeals process, which is governed by the agency regulations discussed above, the standards for judicial review are governed by the Social Security Act. *See* 42 U.S.C. § 405(g); *see also Matthews*, 239 F.3d at 592. Generally, Social Security appeals are considered and decided by this Court pursuant to sentence four of § 405(g), which provides that "[t]he court shall have the power to enter, *upon the pleadings and transcript of the record*, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g) (sentence four) (emphasis added); *see also Matthews*, 239 F.3d at 592. The Act further provides that "[t]he findings of the Commissioner of Social Security as to any fact, *if supported by substantial evidence*, shall be conclusive." 42 U.S.C. § 405(g) (sentence five) (emphasis added); *see also Matthews*, 239 F.3d at 592. "For the purposes of judicial review, the 'record' is 'the evidence upon which the findings and decision complained of are based.'

That is the information that was before the ALJ, the final administrative decisionmaker when the Appeals Council denies review." *Matthews*, 239 F.3d at 594 (quoting 42 U.S.C. § 405(g) (sentence three)).

But if the claimant proffers evidence in this Court that was not presented to the ALJ, disposition of the case may instead be governed by sentence six of § 405(g), which provides that:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and *it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .*

> 28 U.S.C. § 405(g) (sentence six) (emphasis added); *see also Matthews*, 239 F.3d at 592.

Thus, "when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, without or without a remand *based on the record that was made before the ALJ* (Sentence Four review)," but "when the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner *but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ* (Sentence Six review)." *Matthews*, 239 F.3d at 593 (emphasis added). "[A]lthough evidence considered by the Appeals Council is part of the administrative record on appeal, it cannot be considered by the District Court in making its substantial evidence review once the Appeals Council has denied review." *Matthews*, 239 F.3d at 593.

Therefore, the Court is here presented with a threshold question regarding the additional evidence submitted by Mr. Cunningham to the Appeals Council after the ALJ

issued his decision on May 23, 2012. Moreover, the question is not whether the Appeals Council abused its discretion in denying review based on this purportedly new and material evidence. *See Matthews*, 239 F.3d at 594 ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review."). Rather, the question is whether the statutory criteria for a sentence six remand is met — that is, whether the evidence is (1) new and (2) material and if there was (3) good cause why it was not presented to the ALJ. *See* 28 U.S.C. § 405(g) (sentence six); *Matthews*, 239 F.3d at 592–93; *see also Szubak v. Sec'y of Health & Hum. Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) (per curiam).

Although Dr. Dahl's letter expands upon the prior expression of his *opinions* on whether Mr. Cunningham's condition met the listing criteria and whether he was capable of returning to work, it is not "new" evidence because it does not offer any new *facts* that were not already available prior to the ALJ's decision. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997); *Evangelista v. Sec'y of Health & Hum. Servs.*, 826 F.2d 136, 140 (1st Cir. 1987). Moreover,

> [t]he mere fact that Dr. [Dahl] devoted a part of his [letter] to a critique of the ALJ's opinion, which obviously could not have been done before the opinion issued, does not amount to good cause; such a rule would amount to automatic permission to supplement records with new evidence after the ALJ issues a decision in the case, which would seriously undermine the regularity of the administrative process.

*Perkins*, 107 F.3d at 1296.

It is the claimant's burden to provide "some justification for the failure to acquire and present such evidence to the [ALJ]." *Szubak*, 745 F.2d at 833; *see also Matthews*, 239 F.3d at 595. Mr. Cunningham has offer no valid justification whatsoever for his failure to acquire this opinion evidence earlier and present it to the ALJ.

Accordingly, Mr. Cunningham has failed to satisfy the statutory requirements for a sentence-six remand, and the Court is precluded from further considering the additional evidence submitted to the Appeals Council by Mr. Cunningham after the ALJ's decision had been issued on May 23, 2012.[10]

### B. Consideration of Additional Non-Exertional Limitations

Mr. Cunningham contends that the ALJ failed to consider certain non-exertional limitations and incorporate them into the hypotheticals posed to the vocational expert at the administrative hearing. In particular, Mr. Cunningham contends that the ALJ erred by failing to include in his RFC determination a finding that the claimant needed to use a cane for ambulation and balance, and that he needed to periodically elevate his feet to a 90 degree angle while seated throughout the day.

Although Mr. Cunningham himself testified that he needed to use a cane, prescribed by Dr. Dahl, and that he needed to elevate his legs from time to time while seated, there was no medical evidence in the record before the ALJ to support these limitations. Mr. Cunningham points only to the August 2012 letter by Dr. Dahl, which was not presented to the ALJ, and to his own testimony at the administrative hearing, which the ALJ found to be partially credible, rejecting it to the extent it exceeded the ALJ's ultimate RFC determination — Mr. Cunningham has not challenged the ALJ's credibility determination on appeal.

---

[10] That is not to say, however, that this or other additional evidence would not be admissible in further proceedings on remand pursuant to a sentence-four disposition. Under Third Circuit precedent, if a case is remanded for further proceedings, the Court is required to direct the Commissioner and ALJ to reopen and fully develop the record before rendering a new ruling. *See Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798, 800–01 (3d Cir. 2010).

In any event, although these limitations are not addressed in the ALJ's written decision, it is clear from the transcript of the administrative hearing that he did consider these potential limitations. Mr. Cunningham appeared at the hearing with a cane, and his attorney advised the ALJ that it had been prescribed by Dr. Dahl. (Admin. Tr. 30, Doc. 8-2, at 31). Mr. Cunningham testified about his need to use the cane both for ambulation and for balance while standing still. (Admin. Tr. 41–42, Doc. 8-2, at 42–43). He also testified about his need to elevate his legs from time to time when seated. (Admin. Tr. 40–41, Doc. 8-2, at 41–42). In his examination of the vocational expert, the ALJ specifically addressed the impact of an RFC determination that included the cane restriction, with the vocational expert testifying that a cane restriction would erode the available jobs by about 20 percent across the board. (Admin. Tr. 58, Doc. 8-2, at 59; *see also* Admin. Tr. 61–62, Doc. 8-2, at 62–63). Finally, upon examination by Mr. Cunningham's attorney, the vocational expert specifically addressed the effect of a requirement that Mr. Cunningham be permitted to elevate his legs to a 90 degree angle when seated, testifying that it would have "a rather severe erosive effect," to the point that no jobs would be available in significant numbers. (Admin. Tr. 62–63, Doc. 8-2, at 63–64).

Based on the administrative record, the ALJ did not err in failing to adopt the cane restriction and leg-elevation restrictions claimed by Mr. Cunningham.

## C.   THE ALJ'S EVALUATION OF MEDICAL OPINION EVIDENCE

Mr. Cunningham contends that the ALJ failed to properly consider the medical opinion of his treating physician, Dr. Dahl, who opined that Mr. Cunningham met the criteria of Listing 1.04, disorders of the spine. Mr. Cunningham contends that, as a treating physician, Dr. Dahl's medical opinion is entitled to controlling weight, rather than the

"limited weight" afforded to it by the ALJ in this matter.

Under 20 C.F.R. § 404.1527(d), certain issues are not considered medical issues regarding the nature and severity of a claimant's impairments, but instead are expressly reserved to the Commissioner as dispositive administrative findings because they direct the determination of disability. *See* 20 C.F.R. § 404.1527(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2. Treating physician opinions on issues reserved to the Commissioner are never given controlling weight. Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *6. Thus, a treating physician opinion that a claimant is "disabled," "unable to work," or meets or equals the requirements of a particular listed impairment is not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2. Accordingly, Dr. Dahl's opinions that Mr. Cunningham is "permanently disabled," is unable to return to his prior work, is qualified for or deserving of Social Security disability benefits, or meets or equals Listing 1.04 are not entitled to controlling weight as a matter of law.

Even though Dr. Dahl's opinions are not entitled to controlling weight, his opinion is nevertheless relevant evidence that must be considered and weighed by the ALJ. *See* 20 C.F.R. § 404.1527(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored."); Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *7 n.8; *Ray v. Astrue*, 649 F. Supp. 2d 391, 402 n.26 (E.D. Pa. 2009) ("Evidence that does not deserve great weight does not necessarily deserve no weight at all."). The following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and

(5) the treating physician's specialization. 20 C.F.R. § 404.1527(c); *see also* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) . . . .").[11] None of these factors may be omitted or disregarded by the ALJ in considering the weight of the opinion. *See Casillas v. Astrue*, 671 F. Supp. 2d 635, 643–44 (E.D. Pa. 2009) (stating that the ALJ "must consider" the factors set forth in 20 C.F.R. § 404.1527(c) in determining what weight to give a medical opinion); *Waldron v. Astrue*, No. 1:07-CV-2040, 2008 WL 4452350, at *1 (M.D. Pa. Sept. 30, 2008) (same). In addition, the ALJ must consider any other factors that tend to support or contradict the opinion, but only if brought to his or her attention. 20 C.F.R. § 404.1527(c)(6).

In determining the amount of weight to give to Dr. Dahl's opinion, the ALJ here clearly articulated his consideration of factors (1), (2), and (5), expressly referencing the fact that Dr. Dahl had begun treating Mr. Cunningham for his back condition in January 2011, that Dr. Dahl continued to see Mr. Cunningham periodically for conservative treatment and medication management, and Dr. Dahl's specialization as an orthopedist. (Admin. Tr. 19, Doc. 8-2, at 20). He also clearly articulated his consideration of factors (3) and (4), explaining that he gave Dr. Dahl's opinions little weight because they were

> inconsistent with Dr. Dahl's own objective clinical findings, which indicate some lumbar pain and tenderness but demonstrate negative straight-leg raise testing and good motor function in the lower extremities, with no aggressive treatment such as surgical intervention recommended for the claimant . . . .

---

[11] The Court notes that 20 C.F.R. § 404.1527 was recently amended, with the subsection formerly labeled as § 404.1527(d) being renumbered as § 404.1527(c), without any substantive change. *See* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012) (codified at 20 C.F.R. pts. 404 and 416).

Further, Dr. Dahl noted no spinal arachnoiditis[12] or pseudoclaudication evidenced by medically acceptable imaging, as required by listing 1.04.

(Admin. Tr. 19, Doc. 8-2, at 20).

It is unclear just how pseudoclaudication might be "evidenced by medically acceptable imaging" as the ALJ seemed to require, as pseudoclaudication itself is a symptom, or manifestation, of lumbar spinal stenosis in which a nerve root has been compromised. *See generally Campanaro v. Colvin*, No. 3:12-CV-1527, 2014 WL 4272728, at *19 n.15 (M.D. Pa. Aug. 28, 2014) ("Pseudoclaudication refers to cramp like pains in the legs caused by compression of the nerves."); 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(K)(3) ("*Pseudoclaudication*, which may result from lumbar spinal stenosis, is manifested as pain and weakness, and may impair ambulation. Symptoms are usually bilateral, in the low back, buttocks, or thighs, although some individuals may experience only leg pain and, in a few cases, the pain may be unilateral."); 7 Attorneys Medical Advisor § 71:3 (defining neurogenic claudication as "[s]ymptoms of leg pain (and occasionally weakness) on walking or standing, relieved by sitting or spinal flexion, related to neural compression, usually spinal stenosis"); 7 Attorneys Medical Advisor § 71:144 (discussing symptoms of spinal stenosis, including neurogenic claudication). Thus, to establish a disabling disorder of the spine under Listing 1.04(C), a claimant's medical records must include "findings on appropriate medically acceptable imaging" that establish lumbar spinal stenosis, together with clinical findings of pseudoclaudication, "manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively." *See* 20 C.F.R. pt. 404, subpt. P,

---

[12] There is no suggestion whatsoever in Mr. Cunningham's medical records that he has suffered from spinal arachnoiditis, which is separately addressed by Listing 1.04(B). Mr. Cunningham has only invoked Listing 1.04(A) and Listing 1.04(C).

app. 1, § 1.04(C). The medical evidence before the ALJ in this case unequivocally established lumbar spinal stenosis at the L4-L5 and L5-S1 levels. Whether the related pain in Mr. Cunningham's legs, which reportedly prevented him from walking long distances or lengths of time, amounted to an inability to ambulate effectively under the Social Security regulations is a different matter, not addressed by the ALJ, but Dr. Dahl reported unequivocal — albeit conclusory — clinical findings of neurogenic claudication in his response to the ALJ's interrogatories, which the ALJ also failed to address in his decision.

But in any event, a review of the evidence before the ALJ suggests that the record upon which this determination was based is woefully incomplete. Mr. Cunningham's attorney requested medical records from Dr. Dahl on April 29, 2011, and on May 5, 2011, Dr. Dahl's office responded by forwarding copies of all treatment records through his last visit at that time, April 7, 2011. (Admin. Tr. 268, Doc. 8-8, at 28). Mr. Cunningham's administrative hearing was held more than a year later on April 11, 2012, and the ALJ's decision was issued on May 23, 2012. (Admin. Tr. 14–22, Doc. 8-2, at 15–23; Admin. Tr. 23–63, Doc. 8-2, at 24–64). Although Dr. Dahl appears to have continued to treat Mr. Cunningham during the intervening thirteen months and beyond, no additional medical records were requested or submitted into the administrative record, either by Mr. Cunningham's counsel or by the ALJ himself. The only medical evidence in the record reflecting Mr. Cunningham's treatment after April 7, 2011, consists of several copies of the same October 2011 opinion letter by Dr. Dahl, and Dr. Dahl's April 2012 written responses to the ALJ's interrogatories. (Admin. Tr. 301–02, Doc. 8-8, at 61–62; Admin. Tr. 303–04, Doc. 8-8, at 63–64; Admin. Tr. 305–07, Doc. 8-8, at 65–67; Admin. Tr. 309–11, Doc. 8-8, at 69–71).

More importantly, Dr. Dahl's October 2011 letter and April 2012 interrogatory responses suggest the absence of critical medical evidence. In his treatment notes for November 2010, Dr. Dahl reported a negative straight leg raise, bilaterally. (Admin. Tr. 276, Doc. 8-8, at 36). He did not record a straight leg raise test result for either of Mr. Cunningham's office visits in January and April 2011. No subsequent treatment notes were submitted for inclusion in the administrative record, but in his written response to the ALJ's April 2012 interrogatories, Dr. Dahl has stated unequivocally that Mr. Cunningham had a positive straight leg raise test for his right leg. (Admin. Tr. 311, Doc. 8-8, at 71). Similarly, Dr. Dahl observed normal gait in each of his early examinations of Mr. Cunningham in November 2010, January 2011, and April 2011, but his October 2011 letter reports his subsequent observation of antalgic gait. (Admin. Tr. 273, Doc. 8-8, at 33; Admin. Tr. 275, Doc. 8-8, at 35; Admin. Tr. 276, Doc. 8-8, at 36; Admin. Tr. 303, Doc. 8-8, at 63).[13]

Most significant of all, however, is Dr. Dahl's reference to what appears to be a subsequent MRI: "I had him undergo an MRI, and that MRI demonstrated that he had severe degenerative disc disease at L4-5 and L5-S1 with evidence of nerve root impingement at both of those levels." (Admin. Tr. 303, Doc. 8-8, at 63). The only MRI report in the record is an October 2010 MRI performed at the request of Mr. Cunningham's primary care physician, before he began treating with Dr. Dahl. (Admin. Tr. 232–33, Doc. 8-7, at 37–38). The radiologist's observations in that earlier MRI report with respect to stenosis at L4-L5 and L5-S1 are couched in terms such as "mild" and "moderate," rather than "severe."

---

[13] The later opinions and earlier treatment notes are consistent, however, in reporting pain, tenderness, and limited range of motion in Mr. Cunningham's lumbar region, and his complaints of difficulty walking for significant time or distances due to leg pain.

(Admin. Tr. 232–33, Doc. 8-7, at 37–38). Moreover, the radiologist explicitly found no nerve root impingement at L4-L5, and no "definite" root impingement at L5-S1. (Admin. Tr. 232–33, Doc. 8-7, at 37–38). Meanwhile, Dr. Dahl's October 2011 letter appears to reference an entirely different MRI, performed sometime after April 2011, which depicts some deterioration in Mr. Cunningham's condition, or at least a clearer view of the previously identified lumbar spinal stenosis, now showing nerve root impingement.

The administrative proceedings in Social Security disability cases are nonadversarial. *See* 20 C.F.R. § 404.900(b); *Sims v. Apfel*, 530 U.S. 103, 110–12 (2000); *Hess v. Sec'y of Health, Educ. & Welfare*, 497 F.2d 837, 840 (3d Cir. 1974). Thus, an ALJ has an affirmative duty to develop a full and fair record in social security disability cases, even when the claimant is represented by counsel. *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005); *Boone v. Barnhart*, 353 F.3d 203, 208 n.11 (3d Cir. 2003); *Hess*, 497 F.2d at 840. Where the medical evidence before an ALJ presents a conflict or ambiguity, or a gap in the record, it is incumbent upon the ALJ to seek additional evidence or clarification from the claimant's doctors. *See* 42 U.S.C. § 423(d)(5)(B); *Ferguson v. Schweiker*, 765 F.2d 31, 36 (3d Cir. 1985); *Hess*, 497 F.2d at 840–41; *Freeman v. Comm'r of Soc. Sec.*, No. 3:13-CV-00065, 2014 WL 1293865, at *12 (M.D. Pa. Mar. 31, 2014); *Wooten v. Astrue*, Civil Action No. 11-7592, 2012 WL 6601397, at *4 (E.D. Pa. Dec. 17, 2012); *see also* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *6.

The ALJ understandably found Dr. Dahl's October 2011 and April 2012 opinions to be inconsistent with the treatment notes in the record because they were indeed so. But the October 2011 and April 2012 opinions clearly referenced supporting clinical findings and diagnostic imaging missing from the record, the compilation of which appears to have

simply ceased more than a year before the administrative hearing and ALJ decision in this matter. Rather than simply discounting Dr. Dahl's opinions, particularly in the absence of any contrary medical opinion evidence whatsoever, the ALJ should have sought additional evidence or clarification from Dr. Dahl either by requesting the missing MRI report and treatment records or by requesting a more detailed report in support of Dr. Dahl's opinions. *See Demison v. Astrue*, No. ED CV 08-219-PLA, 2009 WL 1844478, at *4–*5 (E.D. Cal. June 25, 2009); *Thomas v. Chater*, No. CIV. A. 95-3194, 1997 WL 256458, at *3 (E.D. Pa. May 9, 1997). Alternatively, the ALJ could have requested a consultative examination by another physician. *See* 20 C.F.R. § 404.1512(e).

Without this additional medical evidence, the record was not fully developed, and the ALJ's assessment of Dr. Dahl's medical opinions and his determinations on disability, both at step three and step five of the five-step sequential evaluation process, are not supported by substantial evidence.

## V.  CONCLUSION

Based on the foregoing, the Court finds that the ALJ's determinations that Mr. Cunningham did not meet or exceed a listed impairment and that he retained the RFC necessary to perform a limited range of light work and make an adjustment to work that exists in significant numbers in the national economy are not supported by substantial evidence.

Accordingly, the Commissioner's decision shall be **REVERSED** and **REMANDED** for further proceedings. On remand, the Commissioner will be directed to "reopen and fully develop the record before rendering a ruling" on the Plaintiff's claim. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798, 800 (3d Cir. 2010).

A remand under sentence four of 42 U.S.C. § 405(g) requires the Court to enter a separate final judgment "affirming, modifying, or reversing the decision of the Commissioner" pursuant to Rule 58 of the Federal Rules of Civil Procedure. *See Shalala v. Schaefer*, 509 U.S. 292, 296–97 (1993); *Kadelski v. Sullivan*, 30 F.3d 399, 401 (3d Cir. 1994). Accordingly, the Clerk will be directed to enter judgment reversing the decision of the Commissioner.

An appropriate order shall follow.

**Dated: September 15, 2014**                   *s/ Karoline Mehalchick*
                                             **KAROLINE MEHALCHICK**
                                             **United States Magistrate Judge**